8 U.S.C. §2241 Petition

COP 04619 SI

# United States District Court

District **Northern (San Jose Division)**

Name **Joseph Mitchell**

Prisoner No. **D-09632**          Case No.

Place of Confinement
**CTF-Soledad State Prison**
**Post Office Box 689 E-3e1-B-L**
**Soledad, Ca. 93960**

2007 SEP -5  P 4: 12

RICHARD W. WIEKING

Name of Petitioner (include name under which convicted)          Name of Respondent (authorized person having custody of petitioner)

**Joseph Mitchell**          U.S. DIST. CT. CA. S.J. SM

v.

**United States Attorney General**
**Alberto Gonzales, et al.,**

The Attorney General of the State of:

**United States**

## PETITION

1. Name and location of court which entered the judgment of conviction under attack

   **Not/Applicable**   **(Attacking only the failure of deportation)**

2. Date of judgment of conviction   **(1984)**

3. Length of sentence   **Now serving one count second degree murder.**
   **(15 years term to life)**

4. Nature of offense involved (all counts)   **Cal. Penal Code §190; this petition deals with**
   **Immigration and Nationality Act §§237(a)(2)(A)(iii), 212(c,h),;**
   **8 U.S.C. §§1182(a)(2)(A)(i)(I), 1182(c,h); 8 C.F.R. §3.14(a) and**
   **8 U.S.C. 1101a(43)(A).**

5. What was your plea? (Check one)
   (a) Not guilty   **X**
   (b) Guilty
   (c) Nolo contendere

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   **Note: Twenty-Three years in State Prison without INS (now BICE) activating**
   **Petitioner's USINS detainer No. A29213665 is an unreasonable delay for activating**
   **deportation.**

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury   **X**
   (b) Judge only
                **(See attached petition with exhibits)**

7. Did you testify at the trial?
   Yes ___   No **X**

8. Did you appeal from the judgment of conviction?
   Yes ___   No **X**

California's State Prison System is now[(2)] holding over 30 thousand illegal aliens (like this Canadian Prisoner), and if BICE agents would just start following the mandatory federal deportation laws, California's overcrowded Prison System now under "federal receivership" would be less burden with aging elderly illegal alien prisoners costing California tax payers millions of dollars in taxes annually..

9. If you did appeal, answer the following:

(a) Name of court  **Not/Applicable** _____

(b) Result _____

(c) Date of result and citation, if known _____

(d) Grounds raised _____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ▭  No **X**

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

(3)

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

   Yes ☐   No ☐

(5) Result     **Not/Applicable** _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding  . _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

   Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.    Yes ☐     No ☐

(2) Second petition,        Yes ☐     No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

**Petitioner filed the mandatory administrative prison appeal, however,**

**Prison Officials refused to hear deportation appeal and stated that they**

**lack subject jurisdiction over the federal deportation laws, and**

**Petitioner now files this petition. (See Exhibit "A" attached.)**

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: See attached petition with all grounds and exhibits in support of petition.

Supporting FACTS (state *briefly* without citing cases or law)

(Same as above)

B. Ground two: (Same as above)

Supporting FACTS (state *briefly* without citing cases or law):

(Same as above)

C. Ground three: __See attached petition with exhibits in support of petition.__

Supporting FACTS (state *briefly* without citing cases or law):

(Same as above)

D. Ground four:

Supporting FACTS (state *briefly* without citing cases or law):

(Same as above)

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

(Same as above)

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes — No X

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing     (None)

(b) At arraignment and plea

(c) At trial _____ Not/Applicable _____.

(d) At sentencing _____.

(e) On appeal _____.

(f) In any post-conviction proceeding _____.

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ⎯ No ⊠

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ⎯ No ⊠
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

   **(None)** _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ⎯ No ⊠

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)
Joseph Mitchell

I declare under penalty of perjury that the foregoing is true and correct. Executed

__8-27-07__
(date)

_____
Signature of Petitioner
Joseph Mitchell

(7)

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____ Joseph Mitchell _____, declare:

I am over 18 years of age and a party to this action. I am a resident of _CTF Central_

_____ Prison,

in the county of _____,

State of California. My prison address is: Central Training Facility
Post Office Box 689,
Soledad, Ca. 93960-0689

On ___8-27-07___,
(DATE)

I served the attached: ___28 U.S.C. §2241 petition___

_____

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows: United States Attorney General Office
Northern District Federal Court      950 Pennsylvania Ave., N.W.
San Jose Division                    Washington D.C. 20530
280 S. First St., #2112              Attorney General Office Cal.
San Jose, Ca. 95113-3006             455 Gold Gate Ave., Suite 11000
                                     San Francisco, Ca. 94102-7004

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _8-27-07_
(DATE)

(DECLARANT'S SIGNATURE)

Joseph Mitchell

Civ-69 (Rev. 9/97)                                    ::ODMA\PCDOCS\WORDPERFECT\22832\l

-9-

JOSEPH MITCHELL
Canadian Illegal Alien State Prisoner
Central Training Facility
Prison # D-09632/E-Wing-301L
Post Office Box 689
Soledad, Ca. 93960-0689

(Petitioner In Pro Se)

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

* * *

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH MITCHELL, | Case No._____ |
| Petitioner, | [USINS No. A29213665] |
| v. | APPLICATION FOR TITLE 28 U.S. C. §2241 PETITION BY A STATE PRISONER WITH A CURRENT USINS DETAINER WHO FILES HIS CLAIMS PURSUANT TO: 8 C.F.R. §3.14 (a), 8 U.S.C. §§1182 (a)(2)(A)(i)(I), 1182 (c,h), 1101 (a)(43)(A), 1231 (b)(3)(B), 1227 (a)(2)(A)(iii), 1227 (2)(I)(II), 1228 (c), 1230b (a)(1), 1251 (a)(2)(A)(iii), 1252 et seq., and 8 C.F.R. §208.17 (a); |
| United States Attorney General Alberto Gonzales, et al., | |
| Defendants. | |

28  U. S. C.  § 2 2 4 1

P E T I T I O N   F I L E D  B Y

I L L E G A L   A L I E N

S T A T E   P R I S O N E R

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORTS OF PETITION FOR DEPORTATION

To: The Honorable Presiding Judge of the Northern District Federal Court, San Jose Division, Please Take Notice:

Petitioner, Joseph Mitchell, an illegal alien from Canada now moves this United States District Court to grant this 28 U.S.C. §2241 petition and to order the Bureau of Immigration and Customs Enforcement ("BICE") officials to activate a charging document immediately and, thereupon, Petitioner be deported in accordance with 8 C.F.R. §3.14 (a) and as set

Page-1-Petition for Deportation

forth in 8 U.S.C. §§1182 (a)(2)(A)(i)(I), 1182 (c,h), 1101 (a)(43)(A), 1231 (b)(3)(B), 1227 (a)(2)(A)(iii), 1227 (I) (II), 1228 (c), 1230b (a)(1), 1251 (a)(2)(A)(iii), 1252 et seq., and C.F.R. §208.17 (a). Petitioner has exceeded all state and federal guideline ranges for his "aggravated felony" under 8 U.S.C. §1101 (a)(43)(A) and pursuant to 8 U.S.C. §1182 (a)(2)(A)(i)(I): all "aggravated felons" are not eligible or suitable for parole in the United States," which was fully discussed in Simeonov v. Ashcroft, 371 F.3d 532, 534-38 (9th Cir.2004). Petitioner has been in state custody for over twenty-three (23) years waiting for I.N.S. (now "BICE") officials to afford Petitioner a fair and impartial deportation hearing in accordance with 8 C.F.R. §3.14 (a) and be deported to Canada. Based on these facts and . . . all the supporting evidence presented throughout this petition, Petitioner graciously request this Honorable District Court grant this genuine 28 U.S.C. §2241 petition. (See Exhibit "A" for reference to prison administrative appeal where CTF-Soledad Prison Officials refuse to hear the claims set forth in this petition and stated: they do not have any jurisdiction over the subject matter and federal deportation laws.) Therefore, this is the only remedy available for this Canadian illegal alien.

Dated this 27th day of August, 2007.

Respectfully Submitted,

Joseph Mitchell
Canadian Illegal Alien State Prisoner
Petitioner In Pro Se
Without Bar Licensed Counsel

Page-2-Petition for Deportation

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF IMMEDIATE DEPORTATION

**A. Federal Deportation Laws require . . . immediate deportation proceedings to commence against this Canadian illegal alien.**

Petitioner maintains the United States District Court of San Jose California holds jurisdiction over his USINS detainer under No. A29213665. Petitioner is currently being held in the CDC&R at CTF-Soledad Level-II State Prison. Petitioner has requested CTF-Soledad Prison Personnel to contact San Jose Bureau of Immigration and Custom Enforcement ("BICE") to activate a charging document and to order Petitioner deportable as stated in Gonzalez v. Ashcroft, 369 F.Supp.2d 442, 447 (S.D.N.Y. 2005) ("A conviction for an aggravated felony at any time after admission to the United States subjects all aliens to removal." 8 U.S.C. §1227 (a)(2)(A)(iii).) The offenses that constitute "aggravated felonies" for the purposes of removal are enumerated in 8 U.S.C. §1101 (a)(43)"); and see U.S. v. Lopore, 304 F.Supp.2d 183, 186 (D.Mass.2004) ("Pursuant to U.S.C. §1227 (a)(2)(A)(iii), any alien who is convicted of an aggravated felony at any time after admission is deportable.")

Both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), contain comprehensive amendments to the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §1101 et seq. Under §237 (a)(2)(A)(iii); of the INA (8 U.S.C. §1227(a)), noncitizens

Page-3-Petition for Deportation

are subject to deportation or removal based on the commission
of an "aggravated felony." That is, under the terms of the
INA, any noncitizen "who is convicted of an aggravated felony
at any, time after admission is deportable." Id. 8 U.S.C.
§1251 (a)(2)(A)(iii). The INA not only subjects aliens to
automatic deportation, it imposes severe sanctions against
aliens convicted of aggravated felonies, barring them as
ineligible for withholding deportation, and precluding asylum.
Once deportation proceedings commence, the alien's rights
are severely limited. For example, an aggravated felon facing
deportation is presumed to be deportable. Id. 8 U.S.C. §1228
(c). The aggravated felon is also ineligible for discretionary
relief    from    removal    such    as    asylum,    8    U.S.C.    §1158
(b)(2)(B)(I); restriction on removal, 8 U.S.C. §1230a (a)(3);
and voluntary departure, 8 U.S.C. §1230b (a)(1).

Significantly, an aggravated felon who has been sentenced
to an aggravated term of imprisonment of at least 5 years
is also ineligible for withholding . . . removal under the
Convention Against Torture ("CAT"). 8 U.S.C. §1231 (b)(3)(B);
Wang v. Ashcroft, 320 F.3d 130, 136 n. 11 (2nd Cir.2003).
The only possible relief an aggravated felon may obtain, if
entitled to the protection of CAT, is to have his removal
deferred to a country where he or she is not likely to be
tortured. Id. 8 C.F.R. §208.17 (a). However, the aggravated
felon is still subjected to immediate deportation to another
country, but not one that will subject him . . . to torture.
Petitioner maintains that he committed an aggravated felony

Page-4-Petition for Deportation

1  and now invokes his federal statutory rights to a fair and
2  impartial deportation hearing before San Jose Immigration
3  Court. See Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir.2003)
4  ("To demonstrate a violation of due process, an alien must
5  demonstrate both a fundamental procedural error and that the
6  error resulted in prejudice.") Petitioner has been in state
7  custody with an active USINS detainer for twenty-three years
8  and has not been afforded any deportation hearing from "BICE"
9  agents and, therefore, clearly presents a genuine case of
10 prejudice based on the deliberate denial of due process.
   B. Petitioner is currently waiting to be deported back to
11 Canada, however, San Jose "BICE" agents are allowing State
   Prison Officials to run an illegal alien slave labor work
12 force at CTF-Soledad State Prison and Petitioner's slave labor
   is conducted under threat of severe C-Status punishment and
13 this action violates federal illegal alien worker laws.

14      Just because Petitioner is a state prisoner waiting to
15 be deported does not allow State Prison Officials to
16 deliberately violate illegal alien labor laws and to force
17 this Canadian illegal alien to work as a slave. See Kim Ho
18 Ma v. Ashcroft, 257 F.3d 1095, 1110 (9th Cir.2001) ("In
19 particular, the INS's position appears to be clearly
20 inconsistent with the Supreme Court's holding in Wong Wing
21 that illegal aliens within the territorial jurisdiction of
22 the U.S. who has been ordered deported could not be put to
23 hard labor prior to their deportation." Quoting Wong Wing
24 v. United States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed.
25 140 (1896) (emphasis added.) Petitioner maintains that
26 regardless of state suitability for parole law under Cal.
27 Penal Code §3041(a), all federal deportation laws "override"
28                    Page-5-Petition for Deportation

1  this state parole law and, therefore, Petitioner is now waiting
2  to be deported in accordance with the mandatory federal NO
3  suitability for U.S. parole requirement, based on the
4  "aggravated felon" status set forth in 8 U.S.C. §1182(a).
5  Most important, illegal aliens waiting in the California Prison
6  System must not be forced to endure hard labor before
7  deportation. Id. Wong Wing, 163 U.S. at 238; also see 8 U.S.C.
8  §1324a (3)(A) and 29 U.S.C. §158(a)(3); and Hoffman Plastic
9  Compounds Inc. v. NLRB, 122 S.Ct. 1275, 1282-83 (U.S.2002)
10  (No person in the United States can work illegal aliens without
11  NLRB approval.) Moreover, San Jose "BICE" Officials currently
12  have total control over Petitioner's USINS warrant based on
13  the required five (5) years state sentence rule under 8 U.S.C.
14  §1227(2)(I) & (II). Therefore, this United States District
15  Court must enforce 8 U.S.C. §1227 et seq. Section 1227 states
16  in relevant part: "any alien who is convicted of a crime
17  involving moral turpitude committed within 5 years, after
18  the date of the admission and is convicted of a crime for
19  which a sentence of one year or longer may be imposed is
20  deportable." (See Cal. Code Regs. tit. 15, §3044(f)(1), punishments.)

21      Any aggravated felon who is sentenced to a term of at
22  least 5 years is ineligible to withhold his mandatory
23  deportation and immediate removal under the Convention Against
24  Torture ("CAT"), 8 U.S.C. §1231(b)(3)(B); Wang v. Ashcroft,
25  320 F.3d 130, 136 n. 11 (2nd Cir.2003). The limited relief
26  that an aggravated felon may obtain, if entitled to the
27  protection of Cat, is to have his removal deferred to a country

28                  Page-6-Petition for Deportation

1   where he or she is more likely not to be tortured. 8 C.F.R.

2   §208.17(a). However, even in this situation the aggravated

3   felon is still subject to immediate deportation to another

4   country. Petitioner is from Canada which has a stable

5   Government. Therefore, Petitioner waives his legal rights

6   under CAT and request immediate deportation.

7       Furthermore, the only other area of federal statutory

8   immigration law that <u>must</u> be considered during the fair

9   deportation hearing process, is the appeal process based on

10  this Court ordering "BICE" officials to grant deportation.

11  See 8 U.S.C. §1252(a)(2)(C) and <u>Henderson v. INS</u>, 157 F.3d

12  106, 119 (2nd Cir. 1998). In Henderson, Congress "intended

13  to make . . . administrative decisions (regarding removal)

14  nonreviewable in the fullest extent possible under the

15  Constitution." The limited judicial avenue available to

16  criminal aliens waiting in the California Prison System to

17  be deported is the REAL ID ACT, Pub.L. No. 109-13, 119 Stat.

18  231 (2005), which amended 8 U.S.C. §1252 to provide judicial

19  review of an order of removal in the form of a "petition for

20  review" in the Court of Appeals. However, this Canadian

21  illegal alien waives his legal right to any appeal under the

22  REAL ID ACT and absolutely maintains that he is a Canadian

23  citizen and was convicted of an "aggravated felony" under

24  8 U.S.C. §1101(a)(43)(A), and, therefore, <u>must</u> be ordered

25  deportable forthwith. (See Exhibit "B" for reference to

26  Petitioner's Birth Certificate and Canadian Social Security

27  Number.) Based on these facts deportation is required.

28                    Page-7-Petition for Deportation

C. Petitioner maintains that under the United States Supreme Court decision of INS v. St. Cyr, 533 U.S. 289, 325, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (2001), it is mandatory that this aggravated felon be deported to his country of origin forthwith.

Although one can describe the level of certainty of deportation for aggravated felons as mandatory, required, predictable, highly likely, the Second Circuit has described the likelihood as "automatic," United States v. Couto, 311 F.3d 179, at 184 (2nd Cir.2002) and moreover the United States Supreme Court calls it "Certain." INS v. St. Cyr, supra, 533 U.S. at 325. Therefore, this Canadian illegal alien must be deported immediately.

D. Any state law used to keep this Canadian illegal alien in the California Prison System must be "overridden" and that all the federal statutory deportations laws set forth in this motion are superior to any state law requirements.

Petitioner asserts that all the above deportations laws govern his current incarceration in the California Prison System and that State Prison Officials cannot argue that "State Law" overrides "Federal Statutory Deportation Laws regarding aggravated felons." Petitioner maintains that the United States Supreme Court made very clear in Freightliner Corp. v. Myrick, "We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, English v. General Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2274-2275, 110 L.Ed.2d 65 (1990), or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is "impossible for private party

1 to comply with both state and **federal** requirements," id.,
2 at 79, 110 S.Ct., at 2275, or where **state law** "stands as an
3 obstacle to the accomplishment and execution of the purposes
4 and objectives of Congress. Hines v. Davidowitz, 312 U.S.
5 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 541 (1941)." Id. 514
6 U.S. 280, 115 S.Ct. 1483, 1487 (1995).

7 Petitioner absolutely maintains that (BICE) officials
8 are responsible for deporting illegal aliens and the Congress
9 did not **intend** for "state administrative" boards to **make** the
10 decision when state prisoners have federal USINS holds placed
11 on them or for state prison officials to use state law to
12 "override" statutory federal deportation laws.

13 E. Petitioner maintains that CTF-Soledad State Prison Officials
have refused to afford Petitioner any type of a deportation
14 hearing and refuse to hear Petitioner's 602 Inmate/Appeal
where Petitioner is requesting to be deported within federal
15 statutory deportation laws and, therefore, prison officials
are violating Administrative Procedure Act, 5 U.S.C. §706
16 (1)&(2) (A)&(C).

17 Plaintiff maintains that CTF-Soledad Prison Officials
18 have failed to implement an information system to assist
19 illegal aliens in the deportation process and to aid San Jose
20 (BICE) officials with information regarding convicted
21 aggravated felons housed in the prison and this action is
22 arbitrary, capricious, and certainly is an abuse of discretion.
23 CTF-Soledad Prison Officials action or inaction is not in
24 accordance with any federal statutory deportation laws and
25 positively violates the Administrative Procedure Act, 5 U.S.C.
26 §706 (1) & (2)(A) & (C). The Ninth Circuit Appeals Court
27 stated in **Cilbent v. National Transportation Safety Board,**

28 **Page-9-Petition for Deportation**

1  80 F.3d 364, 368 (9th Cir.1996) ("5 U.S.C. §706 imposes a
2  uniform standard of review over agency determinations without
3  drawing any such distinctions. Indeed, we have applied an
4  arbitrary and capricious standard of review in upholding an
5  agency's refusal to accept late appeal to its Board in
6  accordance with its internal regulatory guidelines.")

7       The prison officials here at CTF-Soledad refuse to hear
8  Petitioner's appeal where he asked the prison administrators
9  to activate his USINS detainer No. A29213665 and to turnover
10 his custody to (BICE) Officials in San Jose California. The
11 prison officials in their CDC 695 response stated that they
12 do not have subject jurisdiction of these federal deportation
13 laws and that Petitioner must pursue the matter through the
14 appropriate agency, which in this case is this U.S. District
15 Court. (See Exhibit "A" for reference to CDC 602 Inmate/Appeal
16 filed regarding federal deportation laws.)

17 F. Petitioner has complied with the Prison Litigation Reform
   Act (PLRA), 42 U.S.C. §1997e(a) as required by the United
18 States Supreme Court in Booth v. Churner, 532 U.S. 731, 741,
   121 S.Ct. 1819, 1825 (2001).

19

20      In Booth v. Churner, the Supreme Court held that inmates
21 must exhaust administrative remedies, regardless of the relief
22 offered through the administrative procedure. Id. at 741.
23 However, the Sixth Circuit Appeals Court stated in City of
24 Mount Clemens v. U.S.E.P.A., 917 F.2d 908 (6th Cir.1990)
25 ("Although exhaustion remedies is typically required as a
26 condition for judicial review, the requirement is not absolute.
27 The doctrine must be applied in each case with an understanding

28

1  of its purposes behind the exhaustion doctrine, the courts
2  have allowed a number of exceptions. Thus, exhaustion is
3  not required if administrative remedies are inadequate or
4  not efficacious; [or] where pursuit of the administrative
5  remedies would be a futile gesture." [Citation omitted].)
6  see also Shawnee v. Coal Co. v. Andrus, 661 F.2d 1083, 1093
7  (6th Cir.1981) ("exhaustion is not required if administrative
8  remedies are inadequate"); and Mathews v. Diaz, 426 U.S. 67,
9  76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976) ("Where the
10  only issue presented for review was the constitutionality
11  of a provision of the Social Security Act, exhaustion of
12  administrative remedies would have been futile"). Petitioner
13  maintains he should not be forced to exhaust anymore
14  administrative appeals based on the deportation laws within
15  the CDC&R system and that all prison appeals are futile.

16    In Brown v. Valoff, 442 F.3d 926 (9th Cir.2005) we read:
17  "While over-exhaustion may be wise so as to expedite late
18  litigation, the fact remains that Booth does not require an
19  inmate to continue to appeal a grievance once relief is no
20  longer available." Id. at 949 fn. 10. As stated above
21  Petitioner presented his appeal to CTF-Soledad Prison Officials
22  which have stated that they lack jurisdiction to hear the
23  federal statutory deportation laws and, therefore, all
24  administrative appeals have been completed.

25  G. Petitioner maintains that under deportation rights this
case must be considered under "equal protection" and that
26  his "aggravated felony" is listed under 8 U.S.C.
§1101(a)(43)(A) as all other listed "aggravated felons" now
27  being deported and that every other State Prison System in
the United States is allowing inmates convicted of second
28  degree murder to be deported after the 5 year period is served.

1   In **Gonzalez v. Ashcroft**, supra, 369 F.Supp.2d 442
2   (S.D.N.Y.2005) ("A conviction for an aggravated felony **at**
3   **any time after admission** to the United States subjects an
4   alien to removal. 8 U.S.C. §1227 (a)(2)(A)(iii). The offenses
5   that constitute **"aggravated felonies"** for the purposes of
6   removal are enumerated in 8 U.S.C. §1101 (a) (43)." Id. at
7   447.) Petitioner's state crime is listed under (43)(A) (second
8   degree murder one count). Petitioner argues that his
9   deportation must be considered under "equal protection." **See**
10  **Plyler v. Doe**, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d
11  786 (1982) (holding that aliens are protected by the Fifth
12  Amendment's equal protection guarantee). To establish an
13  equal protection violation, therefore, Petitioner **must** identify
14  a class of similarly situated persons who are treated
15  dissimilarly. See **Anderson v. Cass County, Mo.**, 367 F.3d 741,
16  747 (8th Cir.2004).

17  Petitioner positively asserts that state prisoners
18  (illegal aliens) convicted of second degree murder in States
19  other then California, are being deported to there native
20  countries under the same federal deportation laws, which should
21  equally be applied to this California illegal alien state
22  prisoner. Petitioner supports his contentions based on the
23  federal deportation cases of **Tulloch v. I.N.S.**, 175 F.Supp.2d
24  644, 647 (S.D.N.Y.2001); **Boston-Bollers v. I.N.S.**, 106 F.3d
25  352, 353 (11th Cir.1997); **James v. Reno**, 97 Fed.Appx. 340
26  (2nd Cir.2004) **and also Giap v. I.N.S.**, 311 F.Supp.2d 438,
27  439 (S.D.N.Y.2004) ("In 1997, a jury in New York City convicted

28
Page-12-Petition for Deportation

1  Giap second degree murder, for which he was sentenced to 25
2  years to life in prison. Following that conviction, the
3  Immigration and Naturalization Service ("INS") charged Giap
4  with being deportable as an alien convicted of a aggravated
5  felony. See 8 U.S.C. §1227 (a)(2)(A)(iii).")

6      Petitioner's second degree murder falls within the same
7  federal deportation laws as set forth in all the above second
8  degree murderers cases, which have been deported back to their
9  native countries. All of the above second degree murderers
10 served five (5) years before INS officials initiated
11 deportation proceedings, however, this Canadian California
12 illegal alien prisoner has served more time on his second
13 degree murder then any of the above murderers, but (BICE)
14 agents from San Jose still have failed to initiate deportation
15 proceedings in this case. Petitioner maintains ("BICE") agents
16 inaction is arbitrary and capricious and certainly violates
17 the Equal Protections Clause of the U.S. Constitution.

18 H.   Petitioner asserts that indefinite detention based on
   a USINS detainer as an illegal alien California State Prisoner,
   violates his due process right to a fair and impartial
19 deportation hearing within a reasonable amount of time.

20     Petitioner asserts that he has now served twenty-three
21 (23) years for his one count second degree murder and that
22 (BICE) agents located in San Jose California have refused
23 to initiate Petitioner's USINS detainer. The United States
24 Supreme Court stated in Zadvydas v. Davis, "A statute
25 permitting indefinite detention of an alien would raise a
26 serious constitutional problem. The Fifth Amendment's Due
27 Process Clause forbids the Government to "deprive" any "person

28              Page-13-Petition for Deportation

1  . . . of . . . liberty . . . without due process of law."

2  Id. 533 U.S. 678, 121 S.Ct. 2491, 2498-99 (2001) (in relevant

3  part.)  Indeed, "Petitioner's statutory claim that he is being

4  detained without the possibility of a fair and impartial

5  deportation hearing can be heard on habeas, because it effects

6  a substantial right owed Petitioner in accordance with all

7  the above mentioned federal deportation laws.  See Velasquez

8  v. Reno, 37 F.Supp.2d 663, 669 (D.N.J.1999) (quoting Henderson

9  v. INS, 157 F.3d 106, 122 (2nd Cir. 1998) "Stating that

10  statutory claims affecting the substantial rights of this

11  sort, courts have secularly enforced.")

12  Petitioner has now served twenty-three (23) years on

13  the federal USINS detainer No. A29213665 and maintains this

14  delay by San Jose "BICE" agents in the deportation process

15  is unreasonable, certainly arbitrary and definitely capricious.

16  Petitioner alleges his due process rights are being violated

17  under the test enunciated in Barker v. Wingo, 407 U.S. 514

18  (1972), for evaluating delayed hearings under the Sixth

19  Amendment, which is often used to evaluate delayed hearings

20  under the Due Process Clause of the Fifth Amendment.  Id.

21  407 U.S. at 530.  In this case Petitioner has not received

22  any information from CTF-Soledad Prison Officials when BICE

23  agents will activate his USINS detainer and effectively start

24  the deportation process.  In Baker the U.S. Supreme Court

25  described a five (5) year delay as "extraordinary." Id. 407

26  U.S. at 533; see also U.S. v. Doggett, 906 F.2d 573, 578 (11th

27  Cir.1990) ("Ringstaff, the 11th Cir. found a twenty-three

28  Page-14-Petition for Deportation

1  month delay to be presumptive prejudicial. Id. 885 F.2d at

2  1543, quoting cf. Bagga, 782 F.2d 1542 "thirty-six month delay

3  presumptively prejudicial" and Dannard, 722 F.2d at 1513

4  "fifteen month delay presumptively prejudicial.")

5     In sum, this Petitioner has now served twenty-three years

6  in the California Prison System and certainly maintains the

7  San Jose "BICE" agents have abused their administrative

8  discretion, when they refused to deport this illegal alien

9  California State Prisoner and to afford this illegal alien

10  a fair and impartial deportation hearing within a reasonable

11  time limit. See Immigration & Naturalization Serv. v. Yany,

12  519 U.S. 26, 32, 117 S.Ct. 350 (1993) ("irrational departure"

13  from "general policy" governing exercise of administrative

14  discretion "could constitute . . . an abuse of discretion.")

15                          Conclusion

16     Based on the foregoing, this Canadian illegal alien

17  California State Prisoner positively maintains that his due

18  process and equal protection rights have been violated by

19  San Jose "BICE" agents refusal to initiate deportation

20  proceedings after Petitioner served twenty-three years with

21  an active USINS detainer and, therefore, this Honorable Court

22  should order the San Jose "BICE" Director and his agents to

23  deport Petitioner to Canada forthwith.

24  Dated this 27th day of August, 2007.

25                        Respectfully Submitted,

26
   Joseph Mitchell Canadian Illegal Alien,
27  Petitioner In Pro Se
   Without Bar Licensed Counsel
28  Page-15-Petition for Deportation

# EXHIBIT "A"

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*March 6, 2007*

*MITCHELL, D09632*
*CFEWT3000000301BL*

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*The action or decision you are appealing was not taken by the California Department of Corrections, and is therefore outside our jurisdiction. We are returning the documents to you so you may pursue the matter through the appropriate agency CCR 3084.3(c)(1).*

*Comments: Refer to attached BPH Memo.*

J. Aboytes / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

NOTE: Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

BOARD OF PAROLE HEARINGS
1515 K Street, 6th Floor
Sacramento, Ca. 95814



Effective May 1, 2004, the Board of Parole Hearings Appeals, formerly known as the Board of Prison Terms, section (15 CCR section 2050-2056) was repealed by Administrative Directive No. 04/01. The Board of Parole Hearings no longer has an Appeals Unit: therefore, the decisions or action regarding the issue listed below cannot be appealed and will no longer be addressed by the Board, regardless of whether the issues are written on a BPT 1040, a CDC 602, or in letter format:

- Due process (including hearing scheduling)
- Parole revocation process (including hearing panel issues)
- Early discharge requests (prior to discharge review)
- Good cause findings for hearings
- CDCR clerical errors regarding date/time/credit calculations/day for day
- CDCR/P&CSD staff related issues
- Submitted prior to a Board action
- Attorney issues
- Witness issues
- Time assessed at the revocation hearings

 You may go directly to the courts per California Department of Corrections and Rehabilitation, 15 CCR section 3160, inmate access to the courts. Forms are available at the institution's law library. If you are being housed at a county jail, you can obtain a copy of the forms at your jail housing unit.

Issues concerning clerical errors on BPH 1103 PCH an REV forms related to Board Decision, mandatory discharge, credit eligibility during revocation terms, BPH mandated special conditions of parole, retain on parole actions, and other rules of law, can be reviewed by the Board. You can submit these concerns via correspondence to the:

Board of Parole Hearings, Quality Control Unit
1515 "K" Street, Sixth Floor
Sacramento, Ca, 95814.

Sincerely,

Board of Parole Hearings
Attachment

50-35   3-6-7

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | 6-10 |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| JOSEPH MITCHELL | D-09632 | Close/Custody | E-301up |

A. Describe Problem: This prisoner asserts that the CDC&R, the BPH and the Office of Administrative Law (OAL) have implemented and have effectuated an alien slave labor work force under the Cal. Code Regs. tit. 15, Div. III, §3040(a). In accordance with §3040(a) this inmate is being forced to work for the prison system under DIRECT THREAT OF SERIOUS C-STATUS PUNISHMENT, as set forth under CCR, §§3044(4)(A) and 3044(f)(1). Furthermore, indeterminately sentenced inmates, such as myself, MUST COMPLY with the Board of Prison Hearings suitability regulations under CCR, §§2400-2411, and that these suitability

If you need more space, attach one additional sheet.                    (Continued next page)

B. Action Requested: THAT THE "BPH" Chairman and Commissioners will no longer be allowed to enforce deportable aliens to attend Vocational Training Programs intended for U.S. citizens, as set forth under United States Code Title 8 §1324a (3)(A) and Title 29 §158(a)(3). That CDC&R remove all illegal aliens (Continued next page)

Inmate/Parolee Signature: _Joseph Mitchell_     Date Submitted: 3-7-

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: **RECEIVED**     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:

Board of Control form BC-1E, Inmate Claim

MAR   2 2007

CTF APPEALS

(Continued Form CDC 602 Inmate/Appeal, by J. Mitchell)

regulations are being used to usurp the statutory federal illegal alien laws, which do **not** allow illegal aliens to work in the United States and to take jobs away from native born U.S. citizens. Furthermore, the **ONLY** alien that can work in the United States are those authorized to do so by paying the National Relations Board first and these illegal alien **cannot** be convicted of a felony. See **Hoffman v. Plastic Compounds Inc. v. NLRB**, 122 S.Ct. 1275, at pp.1282-83 (2002) and **see Snyder v. Sumner**, 960 F.2d 1448, 1452 (9th Cir.1992) (INS detainers may make prisoners ineligible for desirable work or educational assignments.) This prisoner currently has a detainer pending against him, which will be immediately activated when the CDC&R officials release this illegal alien to INS officials.

Indeed, this illegal alien is **not** authorized to participate in **any** work in California, based on his unqualified alien status under CCR §3815 (a)(3). Therefore, with the entire California prison system near federal takeover, based solely on the unsafe overcrowded conditions within CDC&R, the prudent and appropriate remedy in this case, is for CTF-Soledad officials to contact Sacramento and obtain the authorization to turn this illegal alien over to INS for immediate deportation to his native Country of Canada.

Respectfully Submitted,

JOSEPH MITCHELL
CANADIAN ILLEGAL ALIEN
WITH INS HOLD

Continued Action Requested:

from the California Prison System to INS, for deportation to their prospective countries. The longer you wait to remove thousands of illegal aliens to their countries will only result in more problems down-the-road, such as civil rights lawsuits. Furthermore, this illegal Canadian alien MUST be afforded A-1-A status until he is turned over to INS officials.

Continued Page-1-

# EXHIBIT    "B"



Employment and          Emploi et
Immigration Canada      Immigration Canada

SOCIAL                  NUMÉRO
INSURANCE               D'ASSURANCE
NUMBER                  SOCIALE

484  895  768

JOEY  MITCHELL

SIGNATURE    Joey Mitchell



CANADA
ONTARIO                 BIRTH CERTIFICATE
                        CERTIFICAT DE NAISSANCE

NAME—NOM
MITCHELL, JOEY

DATE OF BIRTH—DATE DE NAISSANCE              CERTIFICATE NUMBER
                                            NUMÉRO DU CERTIFICAT

MAY  26, 1965                               83-492352-01
BIRTHPLACE—LIEU DE NAISSANCE                SEX—SEXE

EAST  YORK                                  M
DATE OF REGISTRATION                        REGISTRATION NUMBER
DE L'ENREGISTREMENT                         NUMÉRO DE L'ENREGISTREMENT

JUN. 08, 1965                               65-05-058099
ISSUED AT
DELIVRÉ À TORONTO, ONTARIO, CANADA.

OCT. 13, 1983
(DEPUTY)                  CERTIFIED EXTRACT FROM BIRTH REGISTRATION
(ARCHIVISTE GENERAL ADJOINT)   EXTRAIT OFFICIEL DES REGISTRES DE NAISSANCE
                          FORM 21 VITAL STATISTICS ACT 11129   (REGISTRAR GENERAL)—(ARCHIVISTE GENERAL)

# Raid targets illegal migrants

## 1,000 agents bust workers at meat plants in six states

By Donna Leinwand
USA TODAY

Dec 13th



One of the world's largest meat processors shut down nearly all of its U.S. operations Tuesday as federal agents raided plants in six states in a crackdown on illegal immigrants who allegedly used stolen identification to get their jobs.

It was unclear how many people were arrested in the raids at Swift & Co.'s headquarters in Greeley, Colo., and its plants in Grand Island, Neb.; Cactus, Texas; Hyrum, Utah; Marshalltown, Iowa; and Worthington, Minn.

The plants have thousands of workers, and Tuesday's massive roundup — which involved 1,000 federal agents — was one of the U.S. government's largest moves ever against illegal workers.

The raids come eight months after Immigration and Customs Enforcement (ICE) arrested 1,187 illegal workers at plants operated by IFCO Systems, a company that makes pallets.

The Swift probe, which began in February, uncovered a "massive identity fraud scheme" in which illegal workers had "stolen the identity of hundreds of people," ICE Assistant Secretary Julie Myers said. She said agents were interviewing those arrested at the plants to determine whether they should face criminal or immigration charges.

Swift, which has not been charged, denied knowledge of the alleged scheme.

"Swift has never condoned the employment of unauthorized workers, nor have we ever knowingly hired such individuals," Swift President and CEO Sam Rovit said in a statement.

Hours before the raids, Weld County, Colo., District Attorney Ken Buck's office filed 25 arrest warrants at the request of U.S. agents.

The arrest affidavits say about 30 Swift employees used false information to get jobs at the Greeley facil-

**Under arrest:** A man waves as a federal agent prepares to handcuff him Tuesday after a raid at a meat plant in Greeley, Colo.

By Richard M. Hackett, (Longmont, Colo.) Daily Times Call, via AP

### Recent raids by U.S. agents

► Aug. 30: Agents arrest 55 illegals who cleaned state buildings in Tallahassee, Fla.

► Aug. 10: 41 illegals arrested at cleaning firm in Hamburg, N.Y.

► Aug. 2: 51 illegals arrested at saddle factory in Sulphur, Okla.

► April 19: Agents arrest 1,187 illegals and seven current and ex-managers at 40 IFCO Systems sites.

Source: USA TODAY research.

ity, which has about 2,700 workers.

One of those using a false ID was identified in court papers as Otilio Torres Rivera. The Social Security number and North Carolina ID he offered as proof of legal residence belonged to a man who had died in February 2005, court papers allege. The dead man's sister had filed a complaint with the Federal Trade Commission after a Social Security Administration report wrongly said her late brother was employed at Swift. Court papers did not specify how the dead man's ID was stolen.

In Greeley, about 75 workers' family members and protesters gathered outside the plant, complaining that ICE agents were cruel and unfair before Christmas, Police Chief Jerry Garner said.

Swift said it would reopen its plants after ICE ends its operation, but that production would depend on the number of workers arrested or detained.

The plants raided handle all of Swift's domestic beef processing and 77% of its pork processing.

Front Page

USA Today, Dec 15th, 06, 3A

## Border fence builder hired illegal workers

Golden State Fence Co., which built part of the border fence between California and Mexico, and two executives pleaded guilty in federal court in San Diego to hiring illegal workers between January 1999 and November 2005.

The company will pay the government $4.7 million, U.S. Attorney Carol Lam said. Mel Kay, 64, the chairman and president, will pay $200,000. Vice President Michael McLaughlin, 42, will pay $100,000. The men face up to five years in prison at sentencing March 28.

— Donna Leinwand

EXibits



**Michelle Malkin**

# Deport criminal aliens

My fellow Americans, we have a problem. We spend billions of dollars on homeland security, but our government can't even track and deport convicted criminal aliens. These are not the well-meaning "newcomers" who just want to "pursue economic opportunities" by "doing the jobs no one else will do." These are foreign-born thugs, sex offenders, murderers and repeat drunk drivers who are destroying the American Dream.

If our immigration and entrance system can't effectively monitor, detain and kick out convicted criminal aliens — including illegal border-crossers, illegal visa overstayers, fugitive deportees, and green-card holders who have committed serious crimes — what good is it?

The kidnapping and murder of 12-year-old Zina Linnik in Tacoma, Wash., on July 4 is a typical example of the criminal alien revolving door. Terapon Adhahn, Zina's suspected killer who allegedly snatched her from the backyard of her home, is a permanent legal resident from Thailand. He was convicted of incest in 1990. He'd sexually attacked his 16-year-old relative and pleaded down from a second-degree rape. Two years later, he was convicted of intimidation with a dangerous weapon.

Section 1227(a)(2)(C), Title 8, of the U.S. code dealing with immigration states: "Any alien who at any time after admission is convicted under any law of . . . using, owning, possessing, or carrying . . . any weapon, part, or accessory which is a firearm or destructive device . . . in violation of any law is deportable."

But Mr. Adhahn was not deported. In fact, as Lorie Dankers, spokeswoman for Immigration and Customs Enforcement in Seattle, admitted: "He escaped our attention."

Just like illegal alien gangster Mwenda Murithi, who was arrested 27 times without deportation before being arrested in the shooting death of 13-year-old innocent bystander Schanna Gayden in June in Illinois.

Just like illegal alien Ezeiquiel Lopez, who built six-year rap sheet without deportation. He was arrested in the murder of Deputy Frank Fabiano two months ago in Wisconsin.

Just like illegal alien Juan Leonardo Quintero, who'd been previously deported after committing crimes from indecency with a child to driving while intoxicated, but who traipsed back into the U.S. last fall and was arrested after allegedly shooting a Houston police officer.

It is not "anti-immigrant radicals" who are fed up with the failure to kick out and keep out criminal aliens. Zina Linnik's uncle, Anatoly Kalchik, says his family was a family of legal immigrants who all obeyed the laws. The Seattle Post-Intelligencer reported: "Zina's uncle was angry that the suspect had not been deported after being convicted in a sex crime. 'We are all immigrants, but we come legally,' Kalchik said of his family. 'If someone is a sex offender, or any kind of offender, he has no business being in America,' he said.

Federal auditors and immigration officers have tried to blow the whistle on this recurring problem for the past 10 years. But the Department of Homeland Security inspector general reported last year that of an estimated 650,000 foreign-born inmates in prison nationally this year, half will be removable aliens who won't be removed because the detention and deportation office does not have the resources to identify, detain and remove" them. And that's just a best guess. Despite federal mandates, cooperative agreements and political promises, there's still no working nationwide system with basic information about jailed criminal aliens.

Rep. David Price, D., N.C., is sponsoring legislation to require monthly prison and jail checks by DHS to track illegal alien inmates, increase spending on criminal alien deportations, and expand a program to encourage more local and state officials to cooperate with the feds to help identify and deport criminal aliens in their hometowns. Why aren't we doing all this already?

I get tons of e-mail asking: "What can I do?" Answer: Sign up to help pressure our government to rid this country of convicted criminal aliens at www.deportthemnow.com.

*Michelle Malkin writes for Creators Syndicate.*