1  Joseph Mitchell
   Canadian Illegal Alien State Prison
2  Prison # D-09632 (E-Wing-301L)
   Post Office Box 689
3  Soledad, Ca. 93960

**FILED**

OCT 0 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4  (Petitioner In Pro Se)

5

6           IN THE UNITED STATES COURT OF APPEALS

7                 FOR THE NINTH CIRCUIT

8                        * * *

07-4619 SI (PR)

9  ─────────────────────────────

10 JOSEPH MITCHELL,                 )  Docket No.:_____
                                    )
11              Petitioner-Appellant, )  APPLICATION FOR
                                    )  CERTIFICATE OF
12    v.                            )  APPEALABILITY BASED ON
                                    )  THE DENIAL OF PETITION
13 UNITED STATES ATTORNEY GENERAL,  )  FOR HABEAS CORPUS,
   et al.,                          )  PURSUANT TO 28 U.S.C.
                                    )  §2241 et seq;
14                                  )
              Defendant-Appellee.   )  MEMORANDUM OF POINTS
15 ─────────────────────────────)  AUTHORITIES IN SUPPORT
                                       OF COA

5✓

16       TO THE HONORABLE PRESIDING JUSTICES

17   IN AND FOR THE NINTH CIRCUIT COURT OF APPEALS

18

19      Petitioner-Appellant,   Joseph   Mitchell   (heretoafter

20 Petitioner), moves this Court to grant COA based on the Northern

21 District Court's denial of 28 U.S.C. §2241 et seq., petition

22 based on lack of jurisdiction. The Northern District Court

23 failed to follow the governing United States Supreme Court

24 citations regarding the retroactive application of the 1994,

25 Immigration and Technical Corrections Act, Pub. L. No. 103-416,

26 108 Stat. 4305 ("INTCA"). See I.N.S. v. St. Cyr, 533 U.S. 289,

27 316, 121 S.Ct. 2271, 2289 fn. 42 (2001); and Fernandez-Vargas

28                        Page-1-COA

1  v. Gonzales, 126 S.Ct. 2422, 2428 (2006) overruling the decision

2  of **Campos v. I.N.S.**, 62 F.3d 311, 313 (9th Cir.1995), and that

3  ("INTCA") is not retroactive to Petitioner's 1984 conviction

4  of a "aggregated felony" under 8 U.S.C. §1101(a) (43)(a), which

5  currently is the sole basis for this Canadian illegal alien's

6  USINS detainer. Therefore, because "INTCA" is not retroactive

7  as set forth in St. Cyr, and Fernandez-Vargas, section 225

8  of INTCA **does** **not** foreclose, or bar such substantive or

9  procedural" relief under 8 U.S.C. §1252(i). Therefore, the

10 prior Ninth Circuit decision must again be followed. See **Garcia**

11 **v. Taylor**, 40 F.3d 299, 301 (9th Cir.1994) (recognizing it

12 is "settled" that "prisoner aliens who seek mandamus to force

13 the INS [now "BICE"] to start deportation proceedings do have

14 standing"); **and** the decision of **Silveyra v. Moschorack**, 989

15 F.2d 1012, 1014 n. 1 (9th Cir.1991) ("held that 8 U.S.C.

16 §1252(i) created a duty to incarcerated aliens because the

17 plaintiff prisoner fell within the "zone of interests" protected

18 by the underlying statute"). The Northern District Court ruling

19 failed to address the retroactive application of "INTCA", §225.

20     Wherefore, Petitioner graciously requests this Court grant

21 COA to resolve this Canadian illegal alien's due process rights

22 to a fair and impartial "BICE" hearing, after 23 years of

23 incarceration.

24 Dated this _27th_ day of September, 2007.

25                                        Respectfully Submitted,

26                                        Joseph Mitchell
                                          JOSEPH MITCHELL
27                                        Canadian Illegal Alien State Prisoner
                                          Petitioner In Pro Se
28                                        Without Bar Licensed Counsel

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF IMMEDIATE DEPORTATION

A. Federal Deportation Laws require . . . immediate deportation proceedings to commence against this Canadian illegal alien.

Petitioner maintains the United States District Court of San Jose California holds jurisdiction over his USINS detainer under No. A29213665. Petitioner is currently being held in the CDC&R at CTF-Soledad Level-II State Prison. Petitioner has requested CTF-Soledad Prison Personnel to contact San Jose Bureau of Immigration and Custom Enforcement ("BICE") to activate a charging document and to order Petitioner deportable as stated in Gonzalez v. Ashcroft, 369 F.Supp.2d 442, 447 (S.D.N.Y. 2005) ("A conviction for an aggravated felony at any time after admission to the United States subjects all aliens to removal." 8 U.S.C. §1227 (a)(2)(A)(iii).) The offenses that constitute "aggravated felonies" for the purposes of removal are enumerated in 8 U.S.C. §1101 (a)(43)"); and see U.S. v. Lopore, 304 F.Supp.2d 183, 186 (D.Mass.2004) ("Pursuant to U.S.C. §1227 (a)(2)(A)(iii), any alien who is convicted of an aggravated felony at any time after admission is deportable.")

Both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), contain comprehensive amendments to the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §1101 et seq. Under §237 (a)(2)(A)(A)(iii) of the INA (8 U.S.C. §1227(a)), noncitizens

1  are subject to deportation or removal based on the commission

2  of an "aggravated felony." That is, under the terms of the

3  INA, any noncitizen "who is convicted of an aggravated felony

4  at any time after admission is deportable." Id. 8 U.S.C.

5  §1251 (a)(2)(A)(iii). The INA not only subjects aliens to

6  automatic deportation, it imposes severe sanctions against

7  aliens convicted of aggravated felonies, barring them as

8  ineligible for withholding deportation, and precluding asylum.

9  Once deportation proceedings commence, the alien's rights

10  are severely limited. For example, an aggravated felon facing

11  deportation is presumed to be deportable. Id. 8 U.S.C. §1228

12  (c). The aggravated felon is also ineligible for discretionary

13  relief from removal such as asylum, 8 U.S.C. §1158

14  (b)(2)(B)(I); restriction on removal, 8 U.S.C. §1230a (a)(3);

15  and voluntary departure, 8 U.S.C. §1230b (a)(1).

16  Significantly, an aggravated felon who has been sentenced

17  to an aggravated term of imprisonment of at least 5 years

18  is also ineligible for withholding . . . removal under the

19  Convention Against Torture ("CAT"). 8 U.S.C. §1231 (b)(3)(B);

20  Wang v. Ashcroft, 320 F.3d 130, 136 n. 11 (2nd Cir.2003).

21  The only possible relief an aggravated felon may obtain, if

22  entitled to the protection of CAT, is to have his removal

23  deferred to a country where he or she is not likely to be

24  tortured. Id. 8 C.F.R. §208.17 (a). However, the aggravated

25  felon is still subjected to immediate deportation to another

26  country, but not one that will subject him . . . to torture.

27  Petitioner maintains that he committed an aggravated felony

28

1   and now invokes his federal statutory right to a fair hearing
2   and to be promptly deported back to his native country of
3   Canada. See Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir.2003)
4   ("To demonstrate a violation of due process, an alien must
5   demonstrate both a fundamental procedural error and that the
6   error resulted in prejudice.")  In the present case Petitioner
7   has been in state custody with an active USINS detainer for
8   twenty-three years without state officials affording him any
9   type of deportation hearing and, therefore, Petitioner has
10  presented prejudice.

11  B. Petitioner is currently waiting to be deported back to
    Canada, however, State Prison Officials are forcing him to
12  work under threat of severe punishment on the prison slave
    labor work force in direct violation of several federal illegal
13  alien employment laws.

14      Just because Petitioner is a state prisoner waiting to
15  be deported does not allow State Prison Officials to
16  deliberately violate illegal alien labor laws and to force
17  this Canadian illegal alien to work as a slave. See Kim Ho
18  Ma v. Ashcroft, 257 F.3d 1095, 1110 (9th Cir.2001) ("In
19  particular, the INS's position appears to be clearly
20  inconsistent with the Supreme Court's holding in Wong Wing
21  that illegal aliens within the territorial jurisdiction of
22  the U.S. who had been ordered deported could not be put to
23  hard labor prior to their deportation. Wong Wing v. United
24  States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896)"
25  (emphasis added.) Petitioner maintains that regardless of
26  his request for immediate transfer under the state Government
27  Code §12012.1, and that federal deportation laws "override"

28

Page-5-COA

state laws and, therefore, Petitioner asserts that he is waiting to be deported based solely on federal mandatory NO suitability for U.S. parole federal law set forth within 8 U.S.C. §1182 et seq., and that illegal aliens waiting to be deported must not be forced to endure hard labor before deportation. Id., Wong Wing, 163 U.S. at 238. Therefore, San Jose (BICE) officials who currently have total control over Petitioner state incarceration and the unlimited power to activate Petitioner USINS warrant, which is authorized by federal statutory laws at anytime after the illegal alien serves five (5) years of his state sentence in accordance with 8 U.S.C. §1227(2)(I) and (II), must be enforced by this Federal District Court. 8 U.S.C. §1227 et seq., states: "any alien who is convicted of a crime involving moral turpitude committed within 5 years, after the date of the admission and is convicted of a crime for which a sentence of one year or longer may be imposed is deportable."

In addition, an aggravated felon who has been sentenced to an aggravated term of imprisonment of at least 5 years is also ineligible for withholding his deportation and immediate removal under the Convention Against Torture ("CAT") 8 U.S.C. §1231(b)(3)(B); Wang v. Ashcorft, 320 F.3d 130, 136 n. 11 (2nd Cir.2003). The limited relief that an aggravated felon may obtain, if entitled to the protection of CAT, is to have his removal deferred to a country where he or she is more likely not to be tortured. Id. 8 C.F.R. §208.17(a). However, even in this situation the aggravated

1  felon is still subject to immediate deportation to another
2  country. In this case, Petitioner is from Canada and there
3  is no problem with canadian officials torturing its citizens
4  and, therefore, Petitioner waives his legal rights under
5  CAT and requests immediate deportation to Canada.

6      Furthermore, the only other area of federal statutory
7  immigration law which must be considered under the fair
8  deportation hearing act, is the appeal process regarding
9  this San Jose United States District "Court Order" granting
10 immediate deportation, as set forth in 8 U.S.C. §1252(a)(2)(C)
11 and **Henderson v. INS**, 157 F.3d 106, 119 (2nd Cir.1998).
12 However, as stated in Henderson, Congress "intended to make
13 .  .  .  administrative decisions (regarding removal]
14 nonreviewable in the fullest extent possible under the
15 Constitution." Id. at 119. The limited judicial avenue
16 available to criminal aliens waiting in the California Prison
17 System to be deported is the REAL ID Act, Pub.L. No. 109-13,
18 119 Stat. 231 (2005), which amended 8 U.S.C. §1252 to provide
19 judicial review of an order of removal on the form of a
20 "petition for review" in the Court of Appeals. However,
21 this Canadian illegal alien also waives his right to any
22 appeal under the REAL ID Act and absolutely maintains that
23 he is a native of Canada who was convicted of an aggravated
24 felony, which requires his deportation forthwith. (See Excerpt
25 (1) for reference to Petitioner's Birth Certificate and
26 Canadian Social Insurance Number.) Based on these factors this
27 Canadian illegal alien is overdue for deportation.

28                            Page-7-COA

1  C. Petitioner maintains that under the United States Supreme
   Court decision of INS v. St. Cyr, 533 U.S. 289, 325, 121 S.Ct.
2  2271, 2293, 150 L.Ed.2d 347 (2001), it is mandatory that this
   aggravated  felon  be  deported  to  his  country  of  origin
3  forthwith.

4      Although  one  can  describe  the  level  of  certainty  of
5  deportation  for  aggravated  felons  as  mandatory,  required,
6  predictable,  highly  likely,  the  Second  Circuit  has  described
7  the  likelihood  as  "automatic,"  United  States  v.  Couto,  311
8  F.3d 179, at 184 (2nd Cir.2002) and moreover the United States
9  Supreme  Court  calls  it  "Certain."    INS  v.  St.  Cyr,  supra,
10 533 U.S. at 325.   Therefore, this Canadian illegal alien must
11 be deported immediately.

12 D. Any  state  law  used  to  keep  this  Canadian  illegal  alien
   in the California Prison System must be "overridden" and that
13 all the federal statutory deportations laws set forth in this
   motion are superior to any state law requirements.
14

15     Petitioner  asserts  that  all  the  above  deportations  laws
16 govern  his  current  incarceration  in  the  California  Prison
17 System and that State Prison Officials cannot argue that "State
18 Law"  overrides  "Federal  Statutory  Deportation  Laws  regarding
19 aggravated felons." Petitioner maintains that the United States
20 Supreme Court made very clear in Freightliner Corp. v. Myrick,
21 "We have recognized that a federal statute implicitly overrides
22 state law either when the scope of a statute indicates that
23 Congress intended federal law to occupy a field exclusively,
24 English v. General Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct.
25 2270,  2274-2275,  110  L.Ed.2d  65  (1990),  or  when  state  law
26 is in actual conflict with federal law.  We have found implied
27 conflict pre-emption where it is "impossible for private party
28

1 to comply with both state and federal requirements," id.,
2 at 79, 110 S.Ct., at 2275, or where state law "stands as an
3 obstacle to the accomplishment and execution of the purposes
4 and objectives of Congress. Hines v. Davidowitz, 312 U.S.
5 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 541 (1941)." Id. 514
6 U.S. 280, 115 S.Ct. 1483, 1487 (1995).

7   Petitioner absolutely maintains that (BICE) officials
8 are responsible for deporting illegal aliens and the Congress
9 did not intend for "state administrative" boards to make the
10 decision when state prisoners have federal USINS holds placed
11 on them or for state prison officials to use state law to
12 "override" statutory federal deportation laws.

13 E. Petitioner maintains that CTF-Soledad State Prison Officials
have refused to afford Petitioner any type of a deportation
14 hearing and refuse to hear Petitioner's 602 Inmate/Appeal
where Petitioner is requesting to be deported within federal
15 statutory deportation laws and, therefore, prison officials
are violating Administrative Procedure Act, 5 U.S.C. §706
16 (1)&(2) (A)&(C).

17   Petitioner maintains that CTF-Soledad Prison Officials
18 have failed to implement an information system to assist
19 illegal aliens in the deportation process and to aid San Jose
20 (BICE) officials with information regarding convicted
21 aggravated felons housed in the prison and this action is
22 arbitrary, capricious, and certainly is an abuse of discretion.
23 CTF-Soledad Prison Officials action or inaction is not in
24 accordance with any federal statutory deportation laws and
25 positively violates the Administrative Procedure Act, 5 U.S.C.
26 §706 (1) & (2)(A) & (C). The Ninth Circuit Appeals Court
27 stated in Cilbent v. National Transportation Safety Board,

28

80 F.3d 364, 368 (9th Cir.1996) ("5 U.S.C. §706 imposes a uniform standard of review over agency determinations without drawing any such distinctions. Indeed, we have applied an arbitrary and capricious standard of review in upholding an agency's refusal to accept late appeals to its Board in accordance with its internal regulatory guidelines.")

The prison officials here at CTF-Soledad refuse to hear Petitioner's appeal where he asked the prison administrators to activate his USINS detainer No. A29213665 and to turnover his custody to (BICE) Officials in San Jose California. The prison officials in their CDC 695 response stated that they do not have subject jurisdiction of these federal deportation laws and that Petitioner must pursue the matter through the appropriate agency, which in this case is this **U.S. District** Court. (See Excerpt (2) for reference to CDC 602 Inmate/Appeal filed regarding federal deportation laws.)

F. Petitioner has complied with the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) as required by the United States Supreme Court in Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825 (2001).

In Booth v. Churner, the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through the administrative procedure. Id. at 741. However, the Sixth Circuit Appeals Court stated in City of Mount Clemens v. U.S.E.P.A., 917 F.2d 908 (6th Cir.1990) ("Although exhaustion remedies is typically required as a condition for judicial review, the requirement is not absolute. The doctrine must be applied in each case with an understanding

1 | of its purposes behind the exhaustion doctrine, the courts
2 | have allowed a number of exceptions. Thus, exhaustion is
3 | not required if administrative remedies are inadequate or
4 | not efficacious; [or] where pursuit of the administrative
5 | remedies would be a futile gesture." [Citation omitted].)
6 | see also Shawnee v. Coal Co. v. Andrus, 661 F.2d 1083, 1093
7 | (6th Cir.1981) ("exhaustion is not required if administrative
8 | remedies are inadequate"); and Mathews v. Diaz, 426 U.S. 67,
9 | 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976) ("Where the
10 | only issue presented for review was the constitutionality
11 | of a provision of the Social Security Act, exhaustion of
12 | administrative remedies would have been futile"). Petitioner
13 | maintains he should not be forced to exhaust anymore
14 | administrative appeals based on the deportation laws within
15 | the CDC&R system and that all appeals are futile.

16 | In Brown v. Valoff, 442 F.3d 926 (9th Cir.2005) we read:
17 | "While over-exhaustion may be wise so as to expedite late
18 | litigation, the fact remains that Booth does not require an
19 | inmate to continue to appeal a grievance once relief is no
20 | longer available." Id. at 949 fn. 10. As stated above
21 | Petitioner presented his appeal to CTF-Soledad Prison Officials
22 | which have stated that they lack jurisdiction to hear the
23 | federal statutory deportation laws and, therefore, all
24 | administrative appeals have been completed.

25 | G. Petitioner maintains that under deportation rights this case must be considered under "equal protection" and that
26 | his "aggravated felony" is listed under 8 U.S.C. §1101(a)(43)(A) as all other listed "aggravated felons" now
27 | being deported and that every other State Prison System in the United States is allowing inmates convicted of second
28 | degree murder to be deported after the 5 year period is served.

1    In  _Gonzalez  v.  Ashcroft_,  supra,  369  F.Supp.2d  442
2   (S.D.N.Y.2005)  ("A  conviction  for  an  aggravated  felony  _at_
3   _any  time  after  admission_  to  the  United  States  subjects  an
4   alien  to  removal.  8  U.S.C.  §1227 (a)(2)(A)(iii).  The  offenses
5   that  constitute  "_aggravated  felonies_"  for  the  purposes  of
6   removal  are  enumerated  in  8  U.S.C.  §1101 (a) (43)."  Id.  at
7   447.)  Petitioner's  state  crime  is  listed  under  (43)(A) (second
8   degree  murder  one  count).  Petitioner  argues  that  his
9   deportation  must  be  considered  under  "equal  protection."  See
10  _Plyler  v.  Doe_,  457  U.S.  202,  210,  102  S.Ct.  2382,  72  L.Ed.2d
11  786  (1982)  (holding  that  aliens  are  protected  by  the  Fifth
12  Amendment's  equal  protection  guarantee).  To  establish  an
13  equal  protection  violation,  therefore,  Petitioner  _must_  identify
14  a  class  of  similarly  situated  persons  who  are  treated
15  dissimilarly.  See  _Anderson  v.  Cass  County,  Mo._,  367  F.3d  741,
16  747  (8th  Cir.2004).

17    Petitioner  positively  asserts  that  state  prisoners
18  (illegal  aliens)  convicted  of  second  degree  murder  in  States
19  other  than  California,  are  being  deported  to  Their  native
20  countries  under  the  same  federal  deportation  laws,  which  should
21  equally  be  applied  to  this  California  illegal  alien  state
22  prisoner.  Petitioner  supports  his  contentions  based  on  the
23  federal  deportation  cases  of  _Tulloch  v.  I.N.S._,  175  F.Supp.2d
24  644,  647  (S.D.N.Y.2001);  _Boston-Bollers  v.  I.N.S._,  106  F.3d
25  352,  353  (11th  Cir.1997);  _James  v.  Reno_,  97  Fed.Appx.  340
26  (2nd  Cir.2004)  and  _also  Giap  v.  I.N.S._,  311  F.Supp.2d  438,
27  439  (S.D.N.Y.2004)  ("In  1997,  a  jury  in  New  York  City  convicted
28

Giap of second degree murder, for which he was sentenced to 25 years to life in prison. Following that conviction, the Immigration and Naturalization Service ("INS") charged Giap with being deportable as an alien convicted of a aggravated felony. See 8 U.S.C. §1227 (a)(2)(A)(iii).")

Petitioner's second degree murder falls within the same federal deportation laws as set forth in all the above second degree murderers cases, which have been deported back to their native countries. All of the above second degree murderers served five (5) years before INS officials initiate deportation proceedings, however, this Canadian California illegal alien prisoner has served more time on his second degree murder than any of the above murderers, but (BICE) agents from San Jose still have failed to initiate deportation proceedings in this case, which Petitioner maintains is arbitrary and capricious and violates his equal protections rights.

H. Petitioner maintains that his indefinite detention based on his USINS detainer as an illegal alien Canadian California State Prisoner violates his due process right to a fair and impartial deportation hearing within a reasonable amount of time served on his California one count second degree murder.

Petitioner asserts that he has now served twenty-three (23) years for his one count second degree murder and that (BICE) agents located in San Jose California have refused to initiate Petitioner's USINS detainer. The United States Supreme Court stated in Zadvydas v. Davis, "A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "deprive" any "person

1 . . . of . . . liberty . . . without due process of law."
2 Id. 533 U.S. 678, 121 S.Ct. 2491, 2498-99 (2001) (in relevant
3 part.) Indeed, "Petitioner's statutory claim that he is being
4 detained without the possibility of a fair and impartial
5 deportation hearing can be heard on habeas because it effects
6 a substantial right of Petitioner's in accordance with all
7 the above mentioned federal deportation laws. See Velasquez
8 v. Reno, 37 F.Supp.2d 663, 669 (D.N.J.1999) (quoting Henderson
9 v. INS, 157 F.3d 106, 122 (2nd Cir. 1998) "Stating that
10 statutory claims affecting the substantial rights of this sort
11 courts have secularly enforced.")

12         Petitioner has now served twenty-three (23) years on
13 his USINS detainer No. A29213665 and that the delay by BICE
14 agents to effectuate any type of deportation proceedings is
15 unreasonable, arbitrary and capricious. Because Petitioner
16 alleges his due process rights are being violated under the
17 test enunciated in Barker v. Wingo, 407 U.S. 514 (1972), for
18 evaluating delays under the Sixth Amendment, is often used
19 to evaluate delay under the Due Process Clause. Id. 407 U.S.
20 at 530. In this case Petitioner has not received any
21 information from CTF-Soledad Prison Officials when BICE agents
22 will activate his USINS detainer and start the deportation
23 process. In Baker the U.S. Supreme Court described a five
24 (5) year delay as "extraordinary." Id. 407 U.S. at 533; see
25 also U.S. v. Doggett, 906 F.2d 573, 578 (11th Cir.1990)
26 ("Ringstaff, the 11th Cir. found a twenty-three month delay
27 to be presumptive prejudicial. Id. 885 F.2d at 1543, quoting
28

1  cf. Bagg, 782 F.2d 1542 "thirty-six month delay presumptively

2  prejudicial" and Dannard, 722 F.2d at 1513 "fifteen month

3  delay presumptively prejudicial.")

4      In sum, this Petitioner has now served twenty-three years

5  in the California Prison System and does maintain the "BICE"

6  agents from San Jose have abused their administrative

7  discretion, when they refused to initiate deportation

8  proceedings within the reasonable amount of time in accordance

9  with 8 U.S.C. §1252a(d)(1). See Immigration & Naturalization

10 Serv. v. Yany, 519 U.S. 26, 32, 117 S.Ct. 350 (1993)

11 ("irrational departure" from "general policy" governing

12 exercise of administrative discretion "could constitute .

13 . . an abuse of discretion").

14 I. Petitioner maintains that in accordance with the mandate
   set forth in I.N.S. v. St. Cyr, 121 S.Ct. 2271, 2287 (2001),
15 AEPDA and IIRIRA did not repeal habeas corpus relief pursuant
   to 28 U.S.C. §2241.

16

17     The United States Supreme Court made perfectly clear

18 that habeas corpus was still available for illegal alien

19 prisoner after the effective dates of the AEDPA and IIRIRA.

20 As set forth in I.N.S. v. St. Cyr, "held that a deportable

21 alien had a right to challenge the Executive's failure to

22 exercise the discretion authorized by the law. [See 8 U.S.C.

23 §1252a(d)(1)]. The exercise of the District Court's habeas

24 corpus jurisdiction to answer a pure question of law in this

25 case is entirely consistent with the exercise of sure

26 jurisdiction in Accardi" (quoting United States ex rel.

27 Hintopoulos v. Shaughnessy, 352 U.S. 72, 77, 77 S.Ct. 618

28                          Page-15-COA

1  (1957). When the Northern District Court stated in the denial

2  that "the Court lacked jurisdiction," was a statement in error,

3  and this Court should remand this case back to the Northern

4  District Court, to hear Petitioner's 28 U.S.C. §2241 petition.

5  J. Petitioner asserts that the Immigration and Nationality
   Technical Corrections Act of 1994, Pub.L. No. 103-416, 108

6  Stat. 4305 ("INTCA"), Section 225 is **NOT** retroactive to
   proceedings already in process before "INTCA" inception date.

7

8       Petitioner maintains that the general provision set forth

9  in section 225 of "INTCA," or any of the different provision

10 of "IIRIRA" designed to limit current §2241 habeas corpus

11 relief, or mandamus review are not retroactive to past actions

12 already commenced, and only apply from their day of inception.

13 As stated in I.N.S. v. St. Cyr, "The presumption against

14 retroactive application of ambiguous statutory provisions,

15 buttressed by "the longstanding principle of construing any

16 lingering ambiguities in deportation statutes in favor of

17 the alien," [quoting] INS v. Cardoza-Fonseca, 480 U.S. 421,

18 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), Id. 121 S.Ct.

19 at 2290. Also, "The INS' reliance, see Reply Brief for

20 Petitioner 12, on INS v. Aguirre-Aguirre, 526 U.S. 415 420,

21 119 S.Ct 1439, 143 L.Ed.2d 590 (1999), is beside the point

22 because that decision simply observed that the new rules would

23 not apply to a proceeding filed before IIRIRA's effective

24 date." Id. 121 U.S. at 2289 fn. 42.

25      Therefore, this Court's decision in Campos v. I.N.S.,

26 62 F.3d 311, 313 (9th Cir.1995) must be reversed. The Campos

27 decision allows the INS (now "BICE") officials to apply the

28

1  1994 "INTCA" to proceedings rendered before its enactment
2  and, therefore, violates the mandate set forth in INS v. St.
3  Cyr, which ruled that "IIRIRA" was not retroactive in alien
4  deportation cases. Id. 121 S.Ct. at 2288. Unless "Congress
5  has directed with the requisite clarity that the law be applied
6  retrospectively." Id. 121 S.Ct. at 2288 (quoting Martin v.
7  Hadiz, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347
8  (1999). Also, "The INS' argument that refusing to apply
9  §304(b) retroactively creates an unrecognizable hybrid of
10 old and new is, for the same reason, unconvincing." Id. 121
11 S.Ct. at 2288 fn. 40.

12     In addition, a "statement that a statute will become
13 effective on a certain date does not even arguably suggest
14 that it has any application to conduct that occurred at an
15 earlier date." Id. at 121 S.Ct. at 2288 (quoting Landgraf,
16 511 U.S., at 257, 114 S.Ct. 1483. Moreover, "the 'principle
17 that the legal effect of conduct should ordinarily be assessed
18 under the law that existed when the conduct took place has
19 timeless and universal human appeal"' (quoting Kaiser, 494
20 U.S., at 855, 110 S.Ct. 1570 SCALIA, J., concurring). Most
21 importantly, "Statutes are disfavored as retroactive when
22 their application "would impair rights a party possessed when
23 he acted, increase a party's liability for past conduct, or
24 impose new duties with respect to transactions already
25 completed." **Fernandez-Vargas v. Gonzales**, 126 S.Ct. 2422,
26 2427-28 (2006) (quoting Landgraf, supra, at 280, 114 S.Ct.
27 1483.

Page-17-COA

28

1  K. This Court's decision in <u>Campos v. I.N.S.</u>, 62 F.3d 311, 313 (9th Cir.1995) was rendered before the United States
2  Supreme Court decisions in <u>INS v. St. Cyr</u>, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); <u>Fernandez-Vargas v.</u>
3  <u>Gonzales</u>, 126 S.Ct. 2422 (2006), which abrogates this Court's <u>decision</u> in <u>Campos</u>, and that "INTCA" was retroactive, when
4  Congress <u>did</u> <u>not</u> <u>explicitly</u> <u>indicate</u> <u>that</u> <u>it</u> <u>intended</u> <u>such</u>
   <u>a result.</u>

5

6      Petitioner maintains that this Court's decision in Compos

7  **v. I.N.S.**, 62 F.3d at 313 was rendered in error. First, this

8  Court on its own accord decided in Compos that Section 225

9  of the 1994 "INTCA" was retroactive to aliens who had USINS

10  detainers placed on them before the effective date of "INTCA."

11  Petitioner asserts that the Congress <u>did</u> <u>not</u> authorize the

12  Ninth Circuit Court of Appeals to made the Immigration and

13  Nationality Technical Corrections Act of 1994, Pub.L. No.

14  103-416, 108 Stat. 4305 ("INTCA") retroactive. In <u>Fernandez-</u>

15  <u>Vargas v. Gonzales</u>, 126 S.Ct. at 2428 ("Accordingly, it has

16  become "a rule of general application" that "a statute **shall**

17  not be given retroactive effect unless such construction is

18  required by explicit language or by necessary implication."

19  [Quoting] United States v. St. Louis, S.F. & T.R. Co, 270

20  U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926) (opinion for

21  the Court by Brandeis, J.). Also, the Supreme Court set forth

22  in <u>Fernandez-Vargas v. Gonzales</u>, the law in regards to

23  retroactive federal statutes. "We first look to "whether

24  Congress has expressly prescribed the statute's proper reach,"

25  Landgraf, supra, at 280, 114 S.Ct. 1483, and in the absence

26  of language as helpful as that we try to draw a comparably

27  firm conclusion about the temporal reach specifically intended

28

by applying "our normal rules of construction," Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of "affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment." Landgraf, supra, at 278, 114 S.Ct. 1483; see also Lindh, supra, at 326, 117 S.Ct. 2059. If the answer is yes, we then apply the presumption against retroactivity by constructing the statute as inapplicable to the event or act in question owing to the "absen[ce of] a clear indication from Congress that it intended such a result." [Quoting] INS v. St. Cyr, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (1999) (quoting Landgraf, supra, at 280, 114 S.Ct. 1483). Id. 126 S.Ct. at 2428.

Petitioner asserts that this Court **did not** consider these above Supreme Court mandates before denying relief in Campos v. I.N.S., 62 F.3d 311. This Court **did not** state whether Congress had intended INTCA to be applied retroactively based on explicit language therein. Petitioner maintains that he has read INTCA and finds **NO** statement therein that Congress wanted the Circuit Courts to apply the mandates therein retroactively and, therefore, this Court should reconsider its decision in Campos. This Canadian illegal alien has been incarcerated for over 23 years without any I.N.S. (now "BICE") hearing regarding his mandatory deportation pursuant to 8 U.S.C. §1252(i) which provides:

1
2
3

"In the case of an alien who is convicted of an
offense which makes the alien subject to deportation,
the Attorney General **shall** begin any deportation
proceeding as expeditiously as possible after the
date of the conviction."

4   Because INTCA is not retroactive to Petitioner's
5   conviction date of 1984 and the USINS detainer hold of 1984,
6   the law before Campos is applicable, which in this case is
7   **Garcia v. Taylor**, 40 F.3d 299, 301 (9th Cir.1994). Petitioner
8   maintains the District Court should have applied the mandates
9   set forth in Garcia to Petitioner's current dilemma, 23 years
10  without any USINS deportation hearing. Petitioner in the
11  past wrote several letters to INS officials over the years,
12  which have never been answered. Petitioner has tried to file
13  a 28 U.S.C. §2241 habeas corpus petition with the deportation
14  court in San Diego, which refused to accept the petition
15  because INS officials had not initiated a charging document.
16  (See separately filed **Excerpts** of the Record (3) for
17  reference.)

18  Petitioner has also tried to file an appeal with
19  CTF-Soledad State Prison Officials asking the prison officials
20  to contact "BICE" agents in San Jose and to ask them to
21  initiate deportation proceedings, however, the Prison Officials
22  refused to hear the appeal and stated that they have **NO**
23  jurisdiction over federal laws dealing with deportation of
24  illegal aliens. (See separately filed Excerpts of the Record
25  (2)).

26  Also, because INTCA is not retroactive to Petitioner's
27  1984 conviction and USINS detainer, in accordance with the

28  Page-20-COA

1  U.S. Supreme Court decisions of St. Cyr and Fernandez-Vargas,
2  and due to the fact Petitioner is arguing that San Jose "BICE"
3  agents failed to follow several federal statutory laws, such
4  as 8 U.S.C. 1252(i) and several others set forth above, this
5  Court should allow Petitioner to proceed with his 28 U.S.C.
6  §2241 habeas corpus petition in the Northern District Court
7  on the merits. This Court stated in Garcia, 40 F.3d at 304:
8  "Should the INS wait to take action to commence proceedings
9  until four to six months before the release date, habeas corpus
10 may well then be available." Petitioner has now waited 23
11 straight years without INS, or BICE agents affording
12 Petitioner's type of fair and impartial deportation hearing
13 under the mandatory **shall** language set forth in 8 U.S.C.
14 §1251(i) and, therefore, having violated Petitioner's federal
15 due process right to a fair and impartial deportation hearing
16 within a reasonable amount of time, this Court should remand.

17                          CONCLUSION

18     Based on the foregoing, this Canadian illegal alien who
19 has served beyond the sentencing guideline range for his one
20 count second degree murder, should be granted a mandatory
21 deportation hearing in accordance with 8 U.S.C. §1252(i),
22 and due to his aggregated felony status under 8 U.S.C. §1101a
23 (43)(a). The district court order denying relief must be
24 reversed and this matter should be remanded for further
25 proceeding consistent with the mandates of the United States
26 Supreme Court.

27     Wherefore, Petitioner graciously requests this appeal
28

1  be granted.

2  Dated this 27th day of September, 2007.

3                         Respectfully Submitted,

4

5                         Joseph Mitchell Canadian Illegal Alien

6                         Petitioner In Pro Se
                          Without Bar Licensed Counsel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              Page-22-COA

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, _____ Joseph Mitchell _____ , declare:

I am over 18 years of age and I am party to this action.  I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

Joseph Mitchell _____ , CDCR #: D-09632
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: E-301-L
SOLEDAD, CA  93960-0689.

On _ Joseph Mitchell _ 9-27-07 , I served the attached:

Application For COA

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows:

Ninth Circuit Court of Appeals
Post Office Box  193939
San Francisco, Ca.  94119-3939

Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, Ca.  94102-7004

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on September 27th 2007 .

Joseph Mitchell
Declarant  Pro Se Petitioner
Prisoner ID # D-09632 / E-301-L